UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOUGLAS JACKSON, | Civil No. 09-5617 (NLH/KMW) |
| Plaintiff, | |
| v. | OPINION |
| J. GRONDOLSKY, et al., | |
| Defendants. | |

**APPEARANCES:**

John Douglas Jackson
4853 Old Route 50
Vienna, Maryland 21869
    *Pro Se*

David S. Cohen, Esquire
Kristy E. Fischer, Esquire
Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP
2070 Springdale Road
Suite 400
Cherry Hill, New Jersey 08003

Tobin A. Butler, Esquire
Litchfield Cavo, LLP
1800 Chapel Avenue West
Suite 360
Cherry Hill, New Jersey 08002
    *Attorneys for Defendant Francis J. Sieber, O.D.*

Karen H. Shelton, Esquire
Office of the United States Attorney
402 East State Street
Trenton, New Jersey 08608
    *Attorney for Defendant J. Grondolsky*

**HILLMAN, District Judge**

        This matter comes before the Court by way of the following

motions: (1) Defendant United States's[1] motion [Doc. No. 44] to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction; (2) Plaintiff's motion [Doc. No. 49] for an extension of time to file a sur-reply; (3) Defendant Sieber's motion [Doc. No. 56] to strike Plaintiff's Certificate of Merit; (4) Plaintiff's motion [Doc. No. 61] for a postponement regarding the motion to strike; and (5) Plaintiff's motion [Doc. No. 62] to modify the Certificate of Merit.  The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendant United States's motion to dismiss is granted, Plaintiff's motion for an extension of time to file a sur-reply is granted, Defendant Sieber's motion to strike is denied, and Plaintiff's remaining motions are dismissed as moot.

I.  **JURISDICTION**

In this case, Plaintiff asserts an Eighth Amendment claim for deliberate indifference, and a claim under the Federal Tort Claims Act.  The Court exercises jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331.

---

1.  For the reasons set forth _infra_, the United States is the proper federal Defendant with respect to Plaintiff's claim under the Federal Tort Claims Act and the motion is construed to be filed on behalf of the United States, not J. Grondolsky.

## II.  <u>BACKGROUND</u>

In its January 3, 2011 Memorandum Opinion and Order the Court previously set forth the lengthy background of this case including, but not limited to, the detailed procedural history of two related actions filed by Plaintiff, the Court's findings upon screening Plaintiff's complaint in one of the related actions, and the relevant factual allegations of the complaint filed in the present action.  (<u>See generally</u> Mem. Op. & Order [Doc. No. 11] 2-18, Jan. 3, 2011.)  Accordingly, the Court sets forth herein only those facts relevant to the present motions.

As the Court previously noted by Opinion dated December 23, 2011, Plaintiff John Douglas Jackson was incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI-Fort Dix") at the time the complaint in this action was filed.[2] (Pl.'s First Am. Compl. [Doc. No. 1] (hereinafter, "Pl.'s Compl."), ¶ 1.)  In this action, Plaintiff essentially alleges that Defendants failed to provide him with adequate medical care regarding a previously diagnosed eye condition and that this failure ultimately resulted in the complete loss of sight in his left eye.  (<u>See, e.g.</u>, Pl.'s Compl. ¶¶ 10-12, 17-21, 23-24, 29-30, 32-42.)  After screening Plaintiff's complaint in January of 2011, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court

---

2.  Since that time, Plaintiff has been released from custody and is "presently at home living in Maryland."  (Letter from Pl. [Doc. No. 57] 1.)

permitted "two narrowly-tailored lines of Plaintiff's claims ... to proceed past the sua sponte dismissal stage." (Mem. Op. & Order [Doc. No. 11] 1, Jan. 3, 2011.)  Specifically, the Court permitted Plaintiff to proceed with his Eighth Amendment deliberate indifference claim against Dr. Sieber based on the alleged denial of, or excessive delay in receiving, prescribed eye medication and eye surgery.  (Id. at 24, 26.)  The Court also permitted Plaintiff's claims under the Federal Tort Claims Act ("FTCA") to proceed past sua sponte dismissal.  (Id. at 24-26.) All of Plaintiff's remaining claims were dismissed with prejudice.  (Id. at 26.)

With regard to the deliberate indifference claim under the Eighth Amendment, the Court found that "Plaintiff's claims against Dr. [Sieber] asserting that Dr. [Sieber] denied (or excessively delayed) Plaintiff's requests for prescriptions or the dispensing of the already-prescribed medications and eye surgery appear[ed] plausible[.]"  (Id. at 24.)  Thus, the Court ordered that Plaintiff's "Eighth Amendment claims based on denial of prescribed eye medication and prescribed eye surgery" could proceed.  (Id. at 26) (internal parentheses omitted). Furthermore, "out of an abundance of caution," the Court found it "warranted to proceed past the sua sponte dismissal stage and obtain responsive pleadings with regard to Plaintiff's FTCA challenges."  (Id. at 24-25.)

Also, in the January 3, 2011 Memorandum Opinion and Order, the Court properly dismissed the United States of America as a defendant with respect to Plaintiff's alleged <u>Bivens</u> claim, (<u>see</u> Mem. Op. & Order [Doc. No. 11] 20-21, 26, Jan. 3, 2011), because a plaintiff cannot bring a <u>Bivens</u> action "to pursue constitutional claims against the United States or its agencies." <u>See</u> <u>Mierzwa v. U.S.</u>, 282 F. App'x 973, 976 (3d Cir. 2008).  To the extent Plaintiff alleged claims under the FTCA, the Court permitted those claims to proceed past <u>sua</u> <u>sponte</u> dismissal and directed service on the warden at FCI-Fort Dix, Defendant Grondolsky, with respect to those FTCA claims.  (Mem. Op. & Order [Doc. No. 11] 24-25, 25 n.4, Jan. 3, 2011.)  The Court specifically noted that permitting service on Warden Grondolsky as the warden at FCI-Fort Dix should "not be construed as this Court's finding that the warden might be liable for Plaintiff's FTCA claims[.]"  (<u>Id.</u> at 25 n.4.)

At this juncture, the Court recognizes that while the United States was properly terminated as a party with respect to Plaintiff's <u>Bivens</u> claim, the only proper defendant on claims brought under the FTCA is, in fact, the United States, not a federal agency sued in its own name or individual federal employees sued in their official capacities.  <u>See, e.g.</u>, <u>Bailey v. U.S. Marshals Serv. Headquarters</u>, 426 F. App'x 44, 45-46 (3d Cir. 2011) ("It is well established that the United States is the

only proper defendant in an action brought under the FTCA."); CNA v. United States, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA.").

In this case, it appears that the United States, while properly dismissed as a Defendant with respect to Plaintiff's Bivens claim, was inadvertently terminated as a party with respect to Plaintiff's surviving FTCA claim.  Although the Court directed service on Warden Grondolsky as the warden of FCI-Fort Dix for purposes of the FTCA claim, Warden Grondolsky should have been terminated as a Defendant in this action as he is not a proper party to Plaintiff's FTCA claim.  See, e.g., Malouf v. Turner, 814 F. Supp. 2d 454, 462 (D.N.J. 2011) (finding that the United States is the only proper party on an FTCA claim and dismissing Warden Grondolsky as a defendant in that action with respect to the FTCA claim); Pinet v. United States, 08-5678, 2010 WL 503022, *2 n.1 (D.N.J. Feb. 8, 2010) (dismissing FTCA claim against Warden Grondolsky in that action because he was not a proper defendant).

Apparently recognizing this issue, the Assistant United States Attorney contends that the present motion to dismiss Plaintiff's FCTA claim is brought "on behalf of the United States as the proper Federal Defendant."  (Br. in Supp. of Federal Def.'s Mot. to Dismiss [Doc. No. 44-1] (hereinafter, "United

6

States's Mot. to Dismiss"), 4.)  While Plaintiff generally opposes the motion to dismiss, Plaintiff appears to concede that the United States is the proper party to his FTCA claim, not Warden Grondolsky.  (Mot. in Opp'n to the United States Attorney's Reply to Pl.'s Compl. [Doc. No. 46] (hereinafter, "Pl.'s First Opp'n"), 4) (arguing that the United States is liable for the actions of independent contractors such as Defendant Sieber).

In light of the foregoing and in order to properly consider the present motion to dismiss, the Court will <u>sua</u> <u>sponte</u> dismiss Warden Grondolsky from this action, and properly substitute the United States in his place as the proper Defendant with respect to Plaintiff's FTCA claim.  <u>See</u> <u>Newsham v. Transp Sec. Admin.</u>, No. 08-105, 2010 WL 715838, at *4 (D.N.J. Feb. 26, 2010) (finding that the United States was the only proper defendant on plaintiff's FTCA claims and <u>sua</u> <u>sponte</u> substituting the United States in place of the Transportation Security Administration as a "necessary prerequisite" to consideration of a motion for summary judgment on plaintiff's FTCA claims).  Therefore, the Court refers to the United States as the Defendant on Plaintiff's FTCA claim throughout the remainder of this Opinion.

III. <u>**DISCUSSION**</u>

A. **Standard for 12(b)(1) Motion to Dismiss**

Here, the United States moves to dismiss Plaintiff's

complaint under Federal Rule of Civil Procedure 12(b)(1).  A
motion to dismiss pursuant to Federal Rule of Civil Procedure
12(b)(1) challenges the existence of a federal court's subject
matter jurisdiction.  "'When subject matter jurisdiction is
challenged under Rule 12(b)(1), the plaintiff must bear the
burden of persuasion.'"  Symczyk v. Genesis HealthCare Corp., 656
F.3d 189, 191 n.4 (3d Cir. 2011) (citing Kehr Packages, Inc. v.
Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

     A motion to dismiss for lack of subject matter jurisdiction
may either (1) "attack the complaint on its face" or (2) "attack
the existence of subject matter jurisdiction in fact, quite apart
from any pleadings."  Mortensen v. First Fed. Sav. & Loan Ass'n,
549 F.2d 884, 891 (3d Cir. 1977).  "The defendant may facially
challenge subject matter jurisdiction by arguing that the
complaint, on its face, does not allege sufficient grounds to
establish subject matter jurisdiction."  D.G. v. Somerset Hills
School Dist., 559 F. Supp. 2d 484, 491 (D.N.J. 2008).  On a
facial attack, "the court must consider the allegations of the
complaint as true."  Mortensen, 549 F.2d at 891.  "A defendant
can also attack subject matter jurisdiction by factually
challenging the jurisdictional allegations set forth in the
complaint."  D.G., 559 F. Supp. 2d at 491.

     Upon a factual attack, by contrast, the court need not
presume the truth of the allegations and "is free to weigh the

evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891.  Moreover, when considering a factual challenge to the Court's jurisdiction under Rule 12(b)(1), the Court is "not confined to the allegations in the complaint ... and can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. U.S., 211 F.3d 749, 752 (3d Cir. 2000) (citing Mortensen, 549 F.2d at 891).  "The defendant may factually attack subject matter jurisdiction at any stage in the litigation, including before the answer has been filed." D.G., 559 F. Supp. 2d at 491.

**B. Exhaustion Under the FTCA**

Generally, the United States is entitled to sovereign immunity unless it otherwise consents to suit. White-Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010).  The United States's "consent to be sued must be 'unequivocally expressed,' and the terms of such consent define the court's subject matter jurisdiction." Id.  With respect to the FTCA, the statute constitutes "a limited waiver of the United States's sovereign immunity." Id.  The FTCA provides that the United States shall be liable, to the same extent as a private individual, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]"  28 U.S.C. § 1346(b)(1); see also 28 U.S.C. §

9

2674.

Prior to bringing an FTCA action against the United States in federal court, a plaintiff must "first present[] the claim to the appropriate Federal agency" and receive a final denial "by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a).  A claim is deemed presented when the federal agency receives written notification of the alleged tortious incident and the resulting injuries, accompanied by a claim for money damages in a sum certain.  28 C.F.R. § 14.2(a). Where a federal agency fails to make a final disposition of the claim within six months from the time it is filed, that failure is "deemed a final denial of the claim" for purposes of instituting suit under the FTCA.  28 U.S.C. § 2675(a).

"In light of the clear, mandatory language of the statute, and [the] strict construction of the limited waiver of sovereign immunity by the United States, ... the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003) (citing Livera v. First Nat'l State Bank of New Jersey, 879 F.2d 1186, 1194 (3d Cir. 1989)).  Specifically, as recognized by the Supreme Court, "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil v. United States, 508 U.S. 106, 113 (1993).  Thus, a district court

may properly dismiss a claim under the FTCA for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) where the plaintiff has not yet exhausted his or her administrative remedies.  See, e.g., Abulkhair v. Bush, 413 F. App'x 502, 506 (3d Cir. 2011) (affirming district court's dismissal of plaintiff's FTCA claim under Rule 12(b)(1) where plaintiff failed to exhaust his administrative remedies before filing suit); Accolla v. United States Gov't, 369 F. App'x 408, 409-10 (3d Cir. 2010) (concluding that the district court properly dismissed plaintiff's FTCA claim where plaintiff filed suit in federal court prior to exhausting administrative remedies).

## C. Independent Contractor Exception

Although the FTCA provides a limited waiver of sovereign immunity whereby the United States may be held liability, "[t]he United States is not liable under the FTCA unless the alleged tortfeasor is an employee of the government."  Moreno v. United States, 387 F. App'x 159, 160 (3d Cir. 2010) (citing 28 U.S.C. §§ 1346(b), 2671).  Under what is known as the independent contractor exception to the FTCA, "the United States is not liable for injuries caused by the negligence of its independent contractor[s.]"  Jackson v. Liberty Mut. Ins. Co., 282 F. App'x 150, 151 (3d Cir. 2008) (citing Norman v. United States, 111 F.3d 356, 357 (3d Cir. 1997) ("[T]here is an independent-contractor exemption in the Federal Tort Claims Act")); see also Moreno, 387

F. App'x at 160 ("[S]uits against independent contractors are not viable" under the FTCA.).

    "The critical factor used to distinguish a federal agency employee from an independent contractor is whether the government has the power 'to control the detailed physical performance of the contractor.'"  <u>Norman</u>, 111 F.3d at 357 (citing <u>United States v. Orleans</u>, 425 U.S. 807, 814 (1976).  "'[T]he question here is not whether the [contractor] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government.'"  <u>Norman</u>, 111 F.3d at 357 (citing <u>Orleans</u>, 425 U.S. at 815).  Moreover, the Court may properly consider whether the independent contractor exception to the FTCA is applicable on a motion to dismiss pursuant to Rule 12(b)(1) because the motion raises jurisdictional issues.  <u>See</u> <u>Pace v. United States</u>, No. 07-3882, 2008 WL 4559598, at *2 (D.N.J. Oct. 9, 2008) (addressing the United States's motion under Rule 12(b)(1) rather than Rule 56 where government argued that a cleaning service was an independent contractor responsible for negligence which led to plaintiffs' injuries).

**IV.  <u>ANALYSIS OF UNITED STATES'S MOTION TO DISMISS</u>**

    In the present motion, the United States moves to dismiss Plaintiff's FTCA claims under Rule 12(b)(1) based on two grounds: (1) Plaintiff failed to timely and properly exhaust his

administrative remedies prior to filing the present suit, (United States's Mot. to Dismiss 5-6); and (2) even assuming proper exhaustion, the alleged denial or delay of medical care by Defendant Sieber cannot give rise to any FTCA claims against the United Stated because Defendant Sieber is an independent contractor, not a federal employee. (Id. at 7-8.) In support of these arguments, the United States attached to its motion to dismiss: (a) two administrative tort claims filed by Plaintiff; (b) federal agency responses to the administrative tort claims; and (c) the declaration of Ann Marie Hinkelman, a Human Resource Manager for the Federal Bureau of Prisons at FCI-Fort Dix declaring that Defendant Sieber is a contract employee (hereinafter, "Hinkelman Decl.").[3] (See Exs. 2-4 to Declaration of Tara Moran [Doc. No. 44-2]; see also Hinkelman Decl. [Doc. No. 44-3] ¶¶ 1, 3.)

   **A.   Exhaustion of Plaintiff's Claims**

   With respect to exhaustion, the United States contends that Plaintiff did not properly or timely exhaust his administrative remedies before filing the present action because Plaintiff filed

---

3. In ruling on the present motion to dismiss pursuant to Rule 12(b)(1), the Court may properly rely on these documents to determine whether it has jurisdiction over Plaintiff's FTCA claims. See Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2000) ("Because the government's challenge to the District Court's jurisdiction was a factual one under FED. R. CIV. P. 12(b)(1), we are not confined to the allegations in the complaint (nor was the District Court) and can look beyond the pleadings to decide factual matters relating to jurisdiction.")

his administrative tort claim on October 13, 2009 and then "filed the instant complaint" on October 27, 2009.  (United States's Mot. to Dismiss 5-6.)  Therefore, the United States argues that "[a]t the time [Plaintiff] filed the instant complaint, ... this Court had no jurisdiction to entertain it, because the administrative claim had not yet been pending six months."  (Id. at 6.)  In support of this argument, the United States relies on an administrative tort claim numbered, TRT-NER-2010-00405, which was filed with the Northeast Regional Office of the Federal Bureau of Prisons on October 13, 2009, (hereinafter, "the October 13, 2009 Tort Claim").[4]  (Id.; see also October 13, 2009 Tort Claim, Ex. 3 to the Decl. of Tara Moran [Doc. No. 44-2] 1-2.) The United States apparently relies upon the October 13, 2009 Tort Claim specifically because Plaintiff referenced that claim by number, TRT-NER-2010-00405, in the complaint to demonstrate that the FTCA exhaustion requirement was satisfied based on the filing of the October 13, 2009 Tort Claim and its subsequent denial on April 13, 2010.  (See United States's Mot. to Dismiss

---

4.  In the October 13, 2009 Tort Claim, Plaintiff generally claims that prior to his transfer to FCI-Fort Dix, he was being treated by a specialist for his eye condition, known as sarcoidosis, whereby he received eye drops and monthly eye pressure checks.  (October 13, 2009 Tort Claim, Ex. 3 to Decl. of Tara Moran [Doc. No. 44-2] 1-2.)  Plaintiff contends that he advised the medical staff at FCI-Fort Dix of this condition and his need for continued care on multiple occasions, but asserts that this care was significantly delayed which led to his total loss of vision in his left eye.  (Id.)  Plaintiff demanded $1,000,000.00 as a result.  (Id.)

6; see also Pl.'s Compl. 14.)

Notwithstanding the exhaustion argument regarding the October 13, 2009 Tort Claim, the United States indicates in its moving papers that Plaintiff filed a *previous* administrative tort claim numbered, TRT-NER-2009-01878, with the Northeast Regional Office on January 12, 2009, (hereinafter, "the January 12, 2009 Tort Claim").[5]  (See United States's Mot. to Dismiss 7 n.2; see also January 12, 2009 Tort Claim, Ex. 2 to Decl. of Tara Moran [Doc. No. 44-2] 1.)  By Memorandum dated July 10, 2009, Henry J. Sadowski, Regional Counsel at the Northeast Regional Office of the Bureau of Prisons informed Plaintiff that his January 12, 2009 Tort Claim had been denied.  (See United States's Mot. to Dismiss 7 n.2; see also July 10, 2009 Memorandum, Ex. 2 to Decl. of Tara Moran [Doc. No. 44-2] 2.)  In this written denial, Mr. Sadowski specifically informed Plaintiff that if he was dissatisfied with the decision, Plaintiff could "bring an action

---

5. In the January 12, 2009 Tort Claim, filed approximately ten months **before** the October 13, 2009 Tort Claim, Plaintiff generally asserts that prior to his arrival at FCI-Fort Dix he had been under the care of a specialist for his severe eye condition and that "[a]s a result of prison officials reluctance in providing [Plaintiff] with this same care" Plaintiff lost vision in his left eye.  (January 12, 2009 Tort Claim, Ex. 2 to Decl. of Tara Moran [Doc. No. 44-2] 1.)  Plaintiff contends that he was seen by the prison's doctor, but that the doctor was not an ophthalmologist specializing in sarcoidosis of the eye.  (Id.) Plaintiff further asserts that the officials at FCI-Fort Dix were negligent under tort law and are liable for the loss of vision in his left eye.  (Id.)  Plaintiff demanded $100,000.00 in damages as a result.  (Id.)

against the United States in an appropriate United States District Court within six (6) months of the date" of the July 10, 2009 Memorandum.  (See July 10, 2009 Memorandum, Ex. 2 to Decl. of Tara Moran [Doc. No. 44-2] 2.)

In noting the existence of the earlier filed January 12, 2009 Tort Claim, the United States acknowledges that it was "aware of [the] earlier tort claim ... filed by Plaintiff[,]" but contends that the earlier tort claim was "not cited as a basis for jurisdiction in [Plaintiff's] complaint."  (United States's Mot. to Dismiss 7 n.2.)  Significantly, the United States concedes that the January 12, 2009 Tort "[C]laim was properly exhausted" and thus "would have supported jurisdiction of the Court for this complaint, had Plaintiff cited to it."  (Id.)  Despite this concession regarding proper exhaustion, the United States appears to be making the nuanced argument that the January 12, 2009 Tort Claim "would have supported jurisdiction" only if Plaintiff had specifically cited that exact Tort Claim, numbered TRT-NER-2009-01878, in the complaint, as opposed to citing the October 13, 2009 Tort Claim, numbered TRT-NER-2010-00405.[6]  The Court finds this argument to be without merit for the reasons set forth below.[7]

_____

6.  The United States fails to cite any authority in support of this argument.

7.  Because Plaintiff is proceeding pro se in this action, the Court must construe Plaintiff's complaint and any additional

As set forth <u>supra</u>, before filing suit in federal court under the FTCA, a plaintiff must first present his claim to the appropriate federal agency.  The purpose of this presentment requirement "is to ease court congestion and to allow the appropriate agency the opportunity to investigate the claim and then to decide whether it wants to settle or defend said claim." <u>Abuhouran v. Fletcher Allen Healthcare</u>, No. 07-CV-05108, 2009 WL 1834316, at *6 (D.N.J. June 25, 2009); <u>see also</u> <u>Tucker v. United States Postal Serv.</u>, 676 F.2d 954, 958 (3d Cir. 1982) ("This requisite minimal notice, therefore, promptly informs the relevant agency of the circumstances of the accident so that it may investigate the claim and respond either by settlement or by defense.")

---

submissions liberally.  <u>Higgs v. Att'y Gen.</u>, 655 F.3d 333, 339 (3d Cir. 2011).  At the same time, however, the FTCA and its procedural requirements must be strictly construed because it acts as a limited waiver of sovereign immunity.  White-Squire, 592 F.3d at 456.
    In rejecting the United States's argument that the January 12, 2009 Tort Claim could support jurisdiction for Plaintiff's complaint **only if** he had specifically cited it in his complaint, the Court strikes the appropriate balance between liberally construing a <u>pro se</u> complaint and strictly construing the procedural requirements of presentment under the FTCA.  Under the facts of this particular case as set forth <u>infra</u>, Plaintiff presented his claims to the appropriate agency and filed his suit after those claims were denied.
    The fact that Plaintiff misidentified the number of a properly exhausted Tort Claim in his complaint, and thereby improperly referenced a non-exhausted Tort Claim is insufficient to dismiss Plaintiff's complaint for failure to exhaust in the absence of specific authority on this issue.  The United States fails to cite any authority for this proposition, and the Court's research has not revealed any.

As set forth more fully above, here, the Court finds that the underlying purpose of the FTCA presentment requirement was satisfied based on the filing of Plaintiff's January 12, 2009 Tort Claim because the Bureau of Prisons was informed of Plaintiff's claim, had the opportunity to investigate that claim, and was able to decide whether to settle or defend against Plaintiff's claim.  Plaintiff's failure to specifically reference or cite to the proper number of the January 12, 2009 Tort Claim in his complaint is of no moment under these circumstances as the record clearly demonstrates that Plaintiff timely and properly exhausted his Tort Claim.[8]

A review of the January 12, 2009 Tort Claim as compared to the October 13, 2009 Tort Claim demonstrates that in both of these Tort Claims, which are largely identical, Plaintiff was attempting to exhaust his administrative remedies relating to the alleged loss of vision in his left eye while at FCI-Fort Dix based on a purported delay or denial of eye care.  (Compare January 12, 2009 Tort Claim, Ex. 2 to Decl. of Tara Moran [Doc. No. 44-2] 1, with October 13, 2009 Tort Claim, Ex. 3 to Decl. of Tara Moran [Doc. No. 44-2] 1-2.)  Moreover, by letter dated December 3, 2009, Mr. Sadowski, a representative of the Bureau of Prisons, a federal agency, acknowledged that Plaintiff's October

---

8.  A point which even the United States concedes with respect to the January 12, 2009 Tort Claim.  (See United States's Mot. to Dismiss 7 n.2.)

13, 2009 Tort Claim was duplicative of Plaintiff's earlier filed January 12, 2009 Tort Claim.[9] (December 3, 2009 Denial Letter, Ex. 4 to Decl. of Tara Moran [Doc. No. 44-2] 1.) Mr. Sadowski specifically explained that upon review, Plaintiff's "claim [TRT-NER-2010-00405] [was] a duplicate of tort claim TRT-NER-2009-01878." (Id.) Mr. Sadowski further instructed Plaintiff to "[u]se Claim No. TRT-NER-2009-01878, received on January 12, 2009, on future correspondence regarding" Plaintiff's claim. (Id.) Furthermore, the FTCA claims raised in the current complaint clearly mirror the claims set forth in both of Plaintiff's January 12, 2009 and October 13, 2009 Tort Claims.

Accordingly, based on the Bureau of Prisons' acknowledgment that Plaintiff's October 13, 2009 Tort Claim was duplicative of his January 12, 2009 Tort Claim, and in light of the fact that both Tort Claims assert virtually identical facts and claims, the Court finds that Plaintiff provided the Bureau of Prisons with information sufficient to investigate Plaintiff's loss of vision claim under the FTCA and to decide whether to settle or defend against that claim. Therefore, it is clear that Plaintiff has fully exhausted his administrative remedies with respect to his alleged vision loss by virtue of filing the January 12, 2009 Tort Claim because this Tort Claim was presented to the appropriate

---

9. Mr. Sadowski is the same Regional Counsel at the Northeast Regional Office of the Federal Bureau of Prisons who denied Plaintiff's initial January 12, 2009 Tort Claim.

federal agency and Plaintiff received a written denial of this Tort Claim.  Moreover, the United States concedes that Plaintiff properly and timely exhausted his administrative remedies with regard to the January 12, 2009 Tort Claim such that this Tort Claim supports jurisdiction for the complaint.  The Court thus rejects the United States's argument that the Court lacks subject matter jurisdiction over Plaintiff's FTCA based on a failure to exhaust.

**B.   Defendant Sieber's Independent Contractor Status**

Having concluded that Plaintiff did in fact exhaust his administrative remedies prior to bringing suit under the FTCA, the Court must now consider whether the Court lacks subject matter on the basis of the independent contractor exception.  The United States asserts that based on the Court's previous rulings in this case, "the only conduct remaining at issue that could support a negligence claim is the conduct of Dr. Sieber [because] all other medical personnel ... were dismissed" from this action. (United States's Mot. to Dismiss 11.)  Therefore, the United States argues that Plaintiff cannot sue the United States, and his FTCA claim should be dismissed for lack of subject matter jurisdiction based on the independent contractor exception to the FTCA because "Dr. Sieber is an independent contractor" and "any alleged negligence on his part would not support liability against the Untied States[.]"  (Id.)

20

In support of this argument, the United States asserts that "it is well settled that the FTCA does not waive the United States' immunity from suit for the negligence of its independent contractors[.]" (Id. at 8.)  The United States relies on case law from multiple Circuit Courts of Appeals holding "that where the federal government contracts for the services of a private physician, the contract physician is not an employee of the government under the FTCA."  (Id. at 9-11) (citing cases).  To establish Dr. Sieber's status as an independent contract, the United States submits the declaration of Ann Marie Hinkelman, a Human Resource Manager for the Federal Bureau of Prisons at FCI-Fort Dix declaring that Defendant Sieber is a contract employee. (See Hinkelman Decl. [Doc. No. 44-3] ¶¶ 1, 3.)

In opposition[10] to the United States's motion, Plaintiff concedes that "Dr. Sieb[e]r is contracted with the Federal Bureau of Prisons[,]" (Pl.'s First Opp'n 3), but argues that officials at FCI-Fort Dix, including the Warden, the Health Care Administrator, and other federal employees, "exercised detailed supervisory control over the contractor's daily operations (Dr. Sieb[e]r)[.]" (Id. at 4.)  Plaintiff contends that because

───────────────

10. Plaintiff originally filed his "Motion in Opposition to the United States Attorneys Reply to Plaintiff's Complaints" [Doc. No. 46], (hereinafter, "Pl.'s First Opp'n"), on July 25, 2011. Although denominated as a motion, Plaintiff's submission is clearly offered in opposition to the United States's motion to dismiss.

21

"[e]very thing that Dr. Sieb[e]r does is under scrutiny" by these officials, including making referrals to specialists and advising these officials of his examination findings, Dr. Sieb[e]r is under sufficient supervisory control by federal employees to support the exercise of jurisdiction.  (Id. at 3-4.)  Plaintiff specifically alleges that the following federal employees at FCI-Fort Dix "exercised detailed supervisory control over the contractor, Dr. Sieb[e]r's daily operations[:]" Dr. Lopez, Dr. Turner, Mr. Spoulding, and Warden Grondolsky.[11]  (Id. at 6.)

In response to Plaintiff's arguments that Defendant Sieber was under sufficient supervisory control by federal employees to warrant liability on the part of the government, the United States again relies on the declaration of Ann Marie Hinkelman to

---

11.  Plaintiff's opposition also attempts to distinguish the present case from Moreno v. United States, 387 F. App'x 159 (3d Cir. 2010), which the United States cited parenthetically in its moving brief.  (Pl.'s Opp'n 2-3.)

While the Court notes Plaintiff's arguments, the Third Circuit in Moreno affirmed the district court's holding that "the United States [could not] be held liable for any negligence attributable to the medical providers who treated" the plaintiff based on: (1) the plaintiff's repeated references to the treating physicians as "contractors" in the amended complaint and administrative tort claims; and (2) the plaintiff's failure to argue that the United States exercised supervisory control over the daily operations of these physicians.  387 F. App'x at 161.

Unlike the plaintiff in Moreno, Plaintiff in this case clearly contends that the United States exercised supervisory control over the day-to-day operations of Defendant Sieber vis-a-vis the federal employees at FCI-For Dix.  However, the Court's determination that Defendant Sieber is an independent contractor under the particular circumstances of this case is not based upon Moreno, but upon authority set forth in additional case law.

demonstrate that Defendant Sieber is a contract employee, not a federal employee.  (See Hinkelman Decl. [Doc. No. 44-3] ¶ 3.) Additionally, the United States submits the declaration of Jacqueline Taylor-Bailey, a Contract Specialist for the Bureau of Prisons at FCI-Fort Dix with access to contractor employee files kept by the Bureau in the ordinary course of business.  (Decl. of Jacqueline Taylor- Bailey (hereinafter, "Taylor Decl.") [Doc. No. 47-1] ¶ 1.)  This includes purchase orders generated by the Contracting Office and filed in an individual contract employee's file.  (Id.)  Attached as Exhibit A to the declaration of Jacqueline Taylor-Bailey is a true and correct copy of a purchased order signed by Ms. Taylor-Bailey "which outlines the services to be performed by Dr. Sieber, and details the contractual arrangement between Dr. Sieber and the Bureau of Prisons."  (Taylor Decl. [Doc. No. 47-1] ¶¶ 2-3; see also Purchase Order, Ex. A to Taylor Decl. [Doc. No. 47-1] 1-2.)

Upon examination of the Purchase Order attached as Exhibit A to the declaration of Ms. Taylor-Bailey, the Court notes that the two-page document, denominated as a "Solicitation/Contract/Order for Commercial Items," numbered as Standard Form 1449, represents the contract entered into by Defendant Sieber and the Bureau of Prisons on behalf of the United States.  (Purchase Order, Ex. A to Taylor Decl. [Doc. No. 47-1] 1-2.)  This contract and the attached statement of work constitute sufficient evidence to

demonstrate that Defendant Sieber is an independent contractor and was not subject to day-to-day supervisory control by federal employees at FCI-Fort Dix.

For example, in Block 17a, Defendant Sieber is identified as a contractor/offeror.  (Purchase Order, Ex. A to Taylor Decl. [Doc. No. 47-1] 1.)  The Schedule of Supplies/Services at Block 20 of the contract sets forth that Defendant Sieber was to "[p]rovide Optometrist services to the inmate population at FCI, Fort Dix" and that these services would "be performed in accordance to the attached statement of work."  (Id.)  The statement of work attached to the contract specifically provides that "[t]his is a contractual arrangement and not a personnel appointment" and explicitly states that "[t]he contractor shall not be subject to government supervision."  (Id. at 2.)  While the statement of work permits the "government ... [to] observe the service as rendered by the contractor[,]" the statement also clearly articulates that the "[r]esults to be obtained will be entirely within the contractor's own unsupervised determination." (Id.)

The Court's determination that Defendant Sieber is an independent contractor based on the language of the contract is consistent with the findings of other district courts within the Third Circuit.  See, e.g., Pace v. United States, No. 07-3882, 2008 WL 4559598, at *1, 3 (D.N.J. Oct. 9, 2008); Boyd v. United

States, No. 3:CV-05-2033, 2006 WL 2828843, at *3 (M.D. Pa. Sept. 29, 2006).  The district court in Pace considered whether the United States was subject to liability under the FTCA for the alleged negligence of a cleaning services company that resulted in the plaintiffs' claim for a slip and fall at a postal facility.  Pace, 2008 WL 4559598, at *1.  Addressing the independent contract exception under Rule 12(b)(1), the district court reviewed the contract between the cleaning services company and the United States Postal Service.  Id. at *2.

Ultimately the court in Pace concluded that the cleaning services company was an independent contractor, found that the United States did not have the power to control the detailed physical performance of the company, and held that the United States was not liable for the company's alleged negligence.  Id. at *3-4.  In so holding, the court relied specifically on the fact that the contract:  (1) identified the cleaning services company as "an independent contractor and not an employee[;]" (2) placed the "responsibility for safety precautions in relation to the cleaning services" on the company, not the postal service; (3) provided that the company would indemnify the postal service from causes of action relating to the company's negligence; and (4) "delegate[d] responsibility to [the company] for all damages occurring as a result of [the company's] negligence."  Id. at *3.

The court also relied on the affidavit of a Postal Service

supervisor affirming that the company was given "broad responsibilities for daily cleaning maintenance, without any supervision by any employee of" the Postal Service.  Id. Accordingly, the court rejected the plaintiffs' contentions that the company was not an independent contractor as "insufficient to overcome the overwhelming indications, contractual and otherwise, that [the cleaning services company] [was] in fact an independent contractor."  Id. at *3.  The court noted that the plaintiffs had merely recited the relevant factors the court must consider without actually demonstrating that the United States retained any control over the company.  Id. at *4.

Particularly relevant to the Court's ruling on this motion to dismiss, the district court in Boyd considered the precise issue of whether optometrists treating inmates at federal prisons are independent contractors or federal employees for purposes of an FTCA claim, by virtue of the level of supervision and control exercised by the Bureau of Prisons over the optometrists' day-to-day activities.  Boyd v. United States, No. 3:CV-05-2033, 2006 WL 2828843, at *1-3 (M.D. Pa. Sept. 29, 2006).  The plaintiff in Boyd alleged, among other things, that two optometrists at a federal prison in Pennsylvania negligently failed to "evaluate, diagnose or treat [the plaintiff's] glaucoma, purportedly

resulting in irreversible loss of vision in his left eye."[12]   Id.
at *1.  The Boyd plaintiff brought his claims pursuant to the
FTCA against medical staff at the federal prison and the
optometrists in question.  Id.  Subsequently, the United States
moved for summary judgment on the basis that it could not be held
liable under the FTCA for the alleged negligence of the
optometrists because they were independent contractors and not
federal employees.  Id.

    After recognizing that the distinction between a federal
employee and an independent contractor under the FTCA is the
determination of whether the government has the power to control
the detailed physical performance of the contractor through
supervision of his day-to-day operations, the district court in
Boyd reviewed the contract between the optometrists and the
Bureau of Prisons.  Id. at *3.  Based on this review, the Boyd
court found that "[t]he contracts, and their respective
attachments, make clear that [the optometrists] are independent
contractors and not BOP employees" because the contracts
"specifically define the relationship between the co-defendants
as contractual and 'not a personnel appointment.'"  Id.  The Boyd
court further relied upon the fact that the contracts specified
that the optometrists "'[would] not be subject to Government

---

12.  The Court recognizes the striking similarity between
Plaintiff's claims in this action and those made by the plaintiff
in Boyd.

supervision, except for security matters.'"  Id.  Although the
optometrists averred that their activities were controlled by the
government despite the terms of these contracts, the court found
that these averments failed to contravene the showing made by the
United States of the optometrists' independent contractor status.
Id.  Therefore, the Boyd court granted summary judgment in favor
of the United States on the plaintiff's FTCA claim for the
negligence of the optometrists because there were not government
employees.  Id.

A review of the contract in Boyd which is filed on the
public docket in the Middle District of Pennsylvania reveals
striking similarities with the contract in this case.[13]
Initially, the Court notes that the first page of the Boyd
contract is denominated as a "Solicitation/Contract/Order for
Commercial Items," numbered as Standard Form 1449.  It is
apparent from the face of this document that it is the identical
standard form contract utilized by the Bureau of Prisons to
engage Defendant Sieber's optometry services at FCI-Fort Dix.

Additionally, just as Box 17a of Defendant Sieber's contract
identified him as the contractor, Box 17a of the Boyd contract

---

13.  The Court notes that it may take judicial notice of this
publicly available document.  See Murakush Caliphate of Amexem
Inc. v. New Jersey, 790 F. Supp. 2d 241, 251-52 ("the court may
take judicial notice of public records [,] ... pleadings and
other documents ... filed by a party in other judicial
proceedings") (citation omitted).

similarly identifies the optometrists sued in that case as contractors/offerors.  (See [Doc. No. 27-2] filed on Feb. 15, 2006 in Boyd v. United States, No. 3:05-cv-02033, 1 (M.D. Pa. 2006).)  Moreover, attached to this standard form contract is a similar statement of work which provides that:

> the following provisions are applicable to the work being performed under this contract:
> a.   The service is a contractual arrangement and not a personnel appointment; ...
> c.   The service does not constitute an employer/employee relationship; and
> d.   The Contractor will not be subject to Government supervision, except for security related matters.  However, the Contractor's performance shall be closely monitored.

(Id. at 4.)  These provisions utilize virtually identical language as the provisions set forth in the statement of work for Defendant Sieber's contract.  (See, e.g. Purchase Order, Ex. A to Taylor Decl. [Doc. No. 47-1] 2) (stating that "[t]his is a contractual arrangement and not a personnel appointment"; "[t]he contractor shall not be subject to government supervision"; "[r]esults to be obtained will be entirely within the contractor's own unsupervised determination").

     In Plaintiff's Sur-Reply,[14] Plaintiff reiterates his

---

14.  After the United States filed its reply brief [Doc. No. 47] to Plaintiff's opposition on July 29, 2011, Plaintiff filed a "Motion to Amend Plaintiff's Motion in Opposition to the Government's Brief in Support of Defendants Motion to Dismiss Plaintiff's FTCA Claim for Lack of Subject Matter Jurisdiction" [Doc. No. 71] on December 5, 2011.

original opposition argument that "there is solid proof that federal employees in fact exercised detailed supervisor[y] control over the contractor's daily operations[.]" (Pl.'s Sur-Reply 2.)  Plaintiff contends that "even though [Dr. Sieber] was an independent contractor[, he] was considered administrative personnel[.]" (Id. at 3.)  Plaintiff thus relies upon the Bureau of Prisons' Policy Statement 6010.02 to argue that because Dr. Sieber "was considered administrative personnel[,]" Dr. Sieber was subject to the supervision and oversight of the Health Services Administrator at FCI-Fort Dix.  (Pl.'s Sur-Reply 2-3, 5)

---

Although Plaintiff entitled this filing as a motion to amend, the Court construes the amended document as Plaintiff's Sur-Reply to the United States's Reply Brief.  On December 7, 2011, Plaintiff also filed an additional amended document [Doc. No. 72] which, as far as the Court can discern, is simply a type-written duplicate of Plaintiff's handwritten Sur-Reply. Therefore, the Court need only consider the Sur-Reply [Doc. No. 71] and not its duplicate [Doc. No. 72].

Pursuant to Local Civil Rule 7.1(d)(6), the filing of a sur-reply is not permitted without permission from the Court.  L. CIV. R. 7.1(d)(6).  On August 10, 2011, approximately twelve days after the United States's Reply Brief was filed, Plaintiff filed a "Motion Requesting Extension of Time to File a Reply to AUSA Reply Brief in Support of Defendants Motion to Dismiss" [Doc. No. 49], (hereinafter, "Pl.'s Mot. for Ext. of Time").  Although inartfully drafted, Plaintiff's motion clearly requested "an extension of time of 30 days to file a reply to the Defendants Reply Brief[.]" (Pl.'s Mot. for Ext. of Time [Doc. No. 49] 1.) Plaintiff noted that his request for additional time was "not intended to cause any undue delay but to obtain documentation in support of his reply to the Governments Reply." (Id.)

In light of Plaintiff's pro se status and in the absence of any objection from the United States, the Court grants Plaintiff's motion [Doc. No. 49] seeking an extension of time to file a sur-reply and considers the Sur-Reply [Doc. No. 71], filed on December 5, 2011, in ruling on the United States's motion.

(citing Ex. A to Pl.'s Sur-Reply, Bureau of Prisons Policy Statement 6010.02).  Plaintiff further asserts that "he witnessed such supervision on numerous occasions."[15]  (Pl.'s Sur-Reply at 4.)  Accordingly, Plaintiff argues that the "United States [is] liable for the negligence of Dr. Sieb[e]r[.]"  (Id. at 5.)

Despite Plaintiff's arguments that Defendant Sieber was subject to daily supervision by federal employees and his reliance on the Bureau of Prison Policy Statement, Plaintiff fails to offer sufficient evidence to demonstrate the specific type of supervision and control that he contends the Bureau of Prisons officials exercised over Dr. Sieber.  Moreover, Plaintiff's allegations are in direct contradiction with the terms of the contract between the Bureau of Prisons and Defendant Sieber which identifies Defendant Sieber as a contractor/offeror, and specifies that Defendant Sieber is not subject to government supervision.  Plaintiff's arguments, although fairly well articulated and on point with regard to the relevant legal issue, are merely that — arguments.  Plaintiff fails to contradict the clear language of the agreement between Defendant Sieber and the Bureau of Prisons which overwhelmingly indicates Defendant Sieber

---

15.  Plaintiff asserts that he submitted "an affidavit under the penalty of perjury stating that he witnessed such supervision on numerous occasions."  (Pl.'s Sur-Reply 4.)  However, no such affidavit is attached to Plaintiff's Sur-Reply or the duplicate of his Sur-Reply.  Moreover, the docket does not reflect that any such affidavit was ever filed.

is an independent contractor.

Therefore, based on the Court's determination that the FTCA's independent contractor exception is applicable in this particular instance, the Court holds that the United States cannot be held liable for any alleged negligence on the part of Defendant Sieber because he is not a federal employee.  Because the Court lacks subject matter over Plaintiff's FTCA claim, the Court grants the United States's motion to dismiss that claim pursuant to Rule 12(b)(1) and terminates the United States as a party in this case.

**V.**     **MOTION TO STRIKE PLAINTIFF'S CERTIFICATE OF MERIT**

Having granted the United States's motion to dismiss the FTCA claim for lack of subject matter jurisdiction, the Court notes that the only remaining claim in this action is Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Sieber.  On August 3, 2011, Plaintiff filed a Certificate of Merit pursuant to Pennsylvania Rule of Civil Procedure 1042.3(a) and Federal Rule of Civil Procedure 11.  (See generally, Pl.'s Certificate of Merit [Doc. No. 48] 1.)  Plaintiff apparently filed this Certificate of Merit and the attached Medical Report Form because he seeks to demonstrate that the "care, skill and knowledge exercised and exhibited in treating plaintiff's eye disease at F.C.I. Ft. Dix fell out side [sic] acceptable professional standards and that such conduct was the cause of

32

[Plaintiff's] blindness via Defendants."   (Id. at 5.)

Defendant Sieber filed a motion [Doc. No. 56] seeking to strike Plaintiff's Certificate of Merit.  Defendant Sieber argues that the Certificate of Merit should be stricken because: (1) "Pennsylvania law is not applicable in this case and the 'Certificate' does not satisfy Pennsylvania law" even if Pennsylvania law controlled in this matter; and (2) even if the Court construes Plaintiff's Certificate of Merit as having been filed pursuant to New Jersey's Affidavit of Merit statute, Plaintiff's Certificate "fails to satisfy the standard set forth in [the statute] ... and fails to demonstrate that Plaintiff has arguably meritorious claims against Dr. Sieber."  (Legal Br. in Supp. of Def. Sieber's Mot. to Strike Pl.'s Certificate of Merit [Doc. No. 56-1] 2, 4.)  Therefore, Defendant Sieber seeks to strike Plaintiff's Certificate of Merit.

At this stage of the case, the only pending claim is an Eighth Amendment claim for deliberate indifference against Defendant Sieber.  An Eighth Amendment claim regarding medical care entails a different analysis from a state law claim for medical malpractice.  To prevail on a claim under the Eighth Amendment, a plaintiff must show that defendants were deliberately indifferent to a serious medical need.  Farmer v. Brennan, 511 U.S. 825, 842 (1994); Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  By contrast, under New Jersey law, to

33

establish a <u>prima</u> <u>facie</u> case of negligence in a medical
malpractice action, "a plaintiff must present expert testimony
establishing (1) the applicable standard of care; (2) a deviation
from that standard of care; and (3) that the deviation
proximately caused the injury." <u>Teilhaber v. Greene</u>, 320 N.J.
Super. 453, 465 (N.J. Super. Ct. App. Div. 1999) (citations
omitted).  As the Third Circuit has repeatedly held, "claims of
negligence or malpractice, without a showing of some more
culpable state of mind, do not establish deliberate indifference
for purposes of an Eighth Amendment claim." <u>Horne v. United</u>
<u>States</u>, 223 F. App'x 154, 157 (3d Cir. 2011).

Pursuant to New Jersey law, an Affidavit of Merit must be
obtained in "any action for damages for personal injuries ...
resulting from an alleged act of malpractice or negligence by a
licensed person in his profession or occupation," which includes
a medical malpractice action.  N.J. STAT. ANN. § 2A:53A-27.
However, an Affidavit of Merit is not a prerequisite to state an
Eighth Amendment claim.  <u>Planker v. Ricci</u>, No. 07-2679, 2009 WL
2928951, at *4 (D.N.J. Sept. 9, 2009) (recognizing that an Eighth
Amendment claim "requires an inmate to show that prison officials
acted with deliberate indifference to his serious medical need.
'Deliberate indifference' [being] more than mere malpractice or
negligence; it [being] a state of mind equivalent to reckless
disregard of a known risk of harm" such that a claim for an

"Eighth Amendment violation does not require the Plaintiff file
an affidavit of merit."); Coletta v. Bd. of Freeholders, No. 06-
585, 2007 WL 128893, at *9 n.5 (D.N.J. Jan. 12, 2007) (finding
that the plaintiff's "failure to comply with the affidavit of
merit statute has no bearing on the Court's analysis of [the]
Eighth Amendment claim ... because 'the affidavit of merit
statute is not a prerequisite for a federal civil rights action
against a doctor who is deliberately indifferent to his or her
patient's medical needs.'") (citing Seeward v. Integrity, Inc.,
815 A.2d 1005, 1011 (N.J. App. Div. 2003)).

In the present action, whether Plaintiff complied with the
New Jersey Affidavit of Merit Statute, or even the Pennsylvania
Certificate of Merit Rule, is irrelevant and has no bearing on
the sole remaining claim in this action for an Eighth Amendment
violation. See Coletta, 2007 WL 128893, at *9 n.5. Accordingly,
Dr. Sieber's motion to strike Plaintiff's Certificate of Merit is
denied. Having denied Defendant Sieber's motion to strike, the
Court dismisses as moot Plaintiff's motion [Doc. No. 61] seeking
a postponement regarding the motion to strike, and Plaintiff's
motion [Doc. No. 62] seeking to modify the Certificate of Merit.

## VI.  CONCLUSION

For the foregoing reasons, the United States's motion to
dismiss pursuant to Rule 12(b)(1) for lack of subject matter
jurisdiction is granted on the basis of the independent

contractor exception to the FTCA.  Additionally, Plaintiff's

motion for an extension of time to file a sur-reply is granted.

Defendant Sieber's motion to strike Plaintiff's Certificate of

Merit is denied, and Plaintiff's motions for a postponement

regarding the motion to strike and to modify the Certificate of

Merit are dismissed as moot.  An Order consistent with this

Opinion will be entered.


Dated: March 20, 2012                /s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.