UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHN DOUGLAS JACKSON, | |
| Plaintiff, | Civil No. 09-5617 (NLH) |
| v. | |
| J. GRONDOLSKY et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**HILLMAN**, District Judge:

    This matter comes before the Court upon Plaintiff's motion to file his second amended complaint and Defendants' opposition to the same. See Docket Entries Nos. 101 and 102. For the reasons detailed below, Plaintiff's application will be granted in part and denied in part.

    On March 12, 2009, the Clerk received Plaintiff's first civil complaint that gave rise to Jackson v. Grondolsky, Civil Action No. 09-1112 (D.N.J.) ("Jackson I"). Although it arrived without a filing fee or in forma pauperis ("IFP") application, this Court granted Plaintiff conditional IFP status in light of his allegations that he was rapidly going blind due to an alleged denial of medical care. Plaintiff, however, did not submit his IFP application as directed but instead submitted an amended complaint which failed to state a viable claim. As a result, the Court dismissed the amended complaint without prejudice to the

filing of a second amended pleading. Additionally, the Court extended Plaintiff's time to submit his IFP application.

Subsequently, Plaintiff did not submit either his IFP application or his second amended pleading but requested a stay of the action. Although the Court denied the stay, Plaintiff was granted additional time to submit a second amended pleading and his IFP application. In response, Plaintiff submitted a letter requesting that the second amended pleading be filed as a new and separate civil matter. The Court therefore issued an order advising him of potential statute of limitations consequences related to the institution of a new and separate civil matter, and further informed Plaintiff that the filing fee would be collected for both cases. Plaintiff then reaffirmed his desire to have his second amended pleading docketed as the original complaint in a new and separate matter.

By that time, the Clerk had received another complaint from Plaintiff[1] which was filed for the purpose of commencing yet another civil matter, Jackson v. Grondolsky, Civil Action No. 09-5617 (D.N.J.). ("Jackson II"). Jackson II was reassigned to this Court and was considered as the new and separate matter in which Plaintiff wished to file his second amended pleading submitted in

---

[1] (which was identical in all substantive respects to his second amended pleading submitted in Jackson I)

Jackson I.  The Court then directed Plaintiff to submit his IFP application with respect to Jackson II.

In the interim, the Clerk again received yet another civil complaint from Plaintiff and opened a third civil matter, Jackson v. Grondolsky, Civil Action No. 09-6459, Docket Entry No. 1 (D.N.J.) ("Jackson III").  Since that complaint was identical to the complaint docketed in Jackson II (and to the second amended pleading received in Jackson I), this Court directed the Clerk to terminate Jackson III as duplicative of Jackson II.

Plaintiff later submitted a letter requesting the Court to reopen Jackson III because Plaintiff purportedly was being confused with another litigant.  The Court, however, issued an order denying Plaintiff's request to reopen Jackson III, concluding Plaintiff was in fact the same litigant in Jackson I, Jackson II and Jackson III.  The Court also expressed concern that Plaintiff still had not submitted his IFP application despite having approximately a year to do so.  Thereafter, Plaintiff submitted his IFP application in the terminated Jackson III matter.  The Court thus construed the IFP application as intended for submission in Jackson II and, upon granting Plaintiff IFP status, conducted a sua sponte review of his challenges asserted among the three actions.

Originally, Plaintiff named the following Defendants in this action: (1) Warden Grondolsky ("Grondolsky"); (2) Doctor Sieber

("Sieber"); (3) Steven Spaulding ("Spaulding"); (4) Clinical Director Lopez ("Lopez"); (4) Alice Cane ("Cane"); (5) Hal Sutherland ("Sutterland"); and a Jane Doe ("Doe").[2]

Essentially, Plaintiff asserts that by the time of his federal criminal conviction, Plaintiff had already been diagnosed with a variety of eye-diseases, such as uveitis, glaucoma, photophobia, cataract and sarcoidosis. While the Court is not aware of the complete history of Plaintiff's housing arrangements during incarceration, it appears that at some point in time Plaintiff was housed at the FCI Big Spring ("Big Spring") in Texas and was later transferred to the FCI Fort Dix ("Fort Dix") and, upon serving his prison term, released.

Plaintiff alleged that, by the time he was moved from Big Springs to Fort Dix, he had already had an eye surgery and was prescribed three types of eye drops and monitoring of his eye pressure. He also asserted that, after the initial refill of his eye drop prescriptions at Fort Dix, his following requests for refills were delayed (or denied entirely) for non-medical reasons, causing burning, itching and pain in his eyes. In addition, Plaintiff alleged that his requests for an examination by an ophthalmologist were denied, and that the monitoring of his

---

[2] To the extent Plaintiff misspelled the names of these Defendants, their name have been based on the parties' later filings. Although it is uncertain, Plaintiff's later submissions also suggested that Spaulding, Cane and Sutherland might be prison staff at the FCI Fort Dix.

eye pressure was performed by Siebur, an optometrist, who checked it at the frequency Plaintiff found insufficient.[3] Plaintiff attributed his eventual loss of vision out of his left eye to these events. Finally, Plaintiff asserted that Lopez, Spaulding and Cane violated his rights because: (1) Lopez never responded to Plaintiff's grievances; (2) Cane disclosed to Plaintiff the fact that Siebur was an optometrist rather than an ophthalmologist; and (3) Spaulding spoke to Plaintiff in a rude fashion. See generally Docket Entry No. 11 (detailing the same at length).

This Court screened Plaintiff's federal claim and dismissed all Plaintiff's Bivens claims based solely on the respondeat superior theory and those that lacked facts implicating any defendant in a cognizable wrong. Next, the Court found his Eighth Amendment and Federal Tort Claim Act ("FTCA") challenges viable but dismissed his Fourteenth and First Amendment claims.[4]

---

[3] Plaintiff now asserts that, "[a]fter [an unspecified number of months,] Plaintiff was seen by an ophthalmologist, who promptly changed Plaintiff's prescription and recommended immediate surgery. Plaintiff then underwent surgery . . . ." Docket Entry No. 101-2, at 7. However, his vision out of his left eye has eventually been lost. See id. Thus, Plaintiff's claims appear to be based on the events that took place during these unspecified months.

[4] The Court pointed out that an ongoing but medically deficient medical treatment or a failure to refer to a particular medical specialist did not state a Bivens claim.

5

Thus, only Plaintiff's Bivens claims against Siebur and his FTCA challenges survived that sua sponte review. See id.

On April 15, 2011, Seiber filed a Rule 12 motion seeking dismissal of Plaintiff's claims; the motion effectively stated that Seiber was an independent contractor who lacked authority to refer Plaintiff to any specialist or to order disbursement of any eye medication. See Docket Entry No. 28.

By Opinion dated December 23, 2011, this Court noted that the Bivens claim asserting a failure to refer to Plaintiff to a particular specialist had already been dismissed at the sua sponte stage. The December 23, 2011 further concluded that the remainder of Plaintiff's Bivens challenges was not amenable to dismissal under Federal Rule of Civil Procedure 12(b)(6) because Sieber's motion relied upon extraneous material potentially relevant only at the summary judgment stage. See Docket Entry No. 73. Shortly thereafter, this Court dismissed Plaintiff's FTCA claims derived from Sieber's actions because he was not an agent of the United States. See Docket Entry No. 82. On June 27, 2012, Magistrate Judge Karen M. Williams appointed Plaintiff a pro bono counsel. See Docket Entries Nos. 94 and 96.

Plaintiff then filed the present motion seeking to file a counseled pleading amending his prior complaint. See Docket Entry No. 101. In the proposed pleading, Plaintiff named as Defendants: (1) the United States of America, which was

6

previously dismissed as a Defendant in March of 2012; (2) the Bureau of Prisons; (3) Jeff Grondolsky, Warden at Fort Dix at the relevant time, who was dismissed as a defendant by the Court's January 2011 Memorandum Opinion and Order; (4) Abigal Lopez de Lasalle, who was previously terminated as a Defendant in the January 2011 Memorandum Opinion and Order; (5) Nicoletta Turner-Foster, a Defendant not previously named in any pleading; (6) Sieber; and (7) Samir Mikhael Sulayman, another Defendant not previously named in any pleading. Plaintiff raised his FTCA claims against the United States on the basis of Spaulding, Cane and Sutherland's conduct. Additionally, Plaintiff raised <u>Bivens</u> and state law negligence and medical malpractice claims against Grondolsky, Lopez, Sieber, Turner-Foster and Sulayman.[5] <u>See</u> Docket Entry No. 101-2.

Initially, the Court notes that with respect to any potential <u>Bivens</u> claims that Plaintiff seeks to assert in the proposed amended complaint, his allegations that he was denied the eye drops prescribed to him at Big Spring still asserts a viable claim, as the Court previously recognized, because he alleges that denial or delay of these refills was for non-medical

---

[5] Although the record suggests that Plaintiff has full possession of his medical records, his factual allegations are sparse. Rather, his factual assertions are couched as general statements, such as "Plaintiff filed numerous administrative remedies" or "on numerous occasions [Plaintiff] told [that] he was not receiving his prescription eye drops." Docket Entry No. 101-2, at 5.

7

reasons. See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988) ("[D]eliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"). In contrast, Plaintiff's proposed "eye monitoring" Bivens claim, as stated in the proposed amended complaint, is not viable since Plaintiff has never asserted that his prescribed treatment required examinations by an ophthalmologist.[6]

---

[6] Plaintiff has consistently asserted that his post-Big Spring prescribed treatment included monitoring of his eye pressure, the task which was performed by Sieber, although not as the frequency Plaintiff desired. Thus, without more, Plaintiff's claim that he should have been referred to a particular specialist, i.e., an ophthalmologist, are not viable under Bivens. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm." Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). A prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. See Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).
Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at best such a claim would be for medical malpractice and not an Eighth Amendment violation. See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); White, 897 F.2d at 110; Smith v. Sator, 102 F. App'x 907 (6th Cir. 2004) (where a prisoner alleged that defendants did not provide various specialized medical tests that

Further, under <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004), <u>Nami v. Fauver</u>, 82 F.3d 63 (3d Cir. 1996), and <u>Durmer v. O'Carroll</u>, 991 F.2d 64 (3d Cir. 1993), the narrow holdings of which, arguably, survived <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), a mere allegation by the prisoner that he informed another physician or filed grievances with prison officials complaining about deficiencies of his medical care fail to state a cognizable claim unless the prisoner asserts facts showing that the care he was provided amounted to a <u>de facto</u> complete denial of medical care (rather than merely deficient medical assistance), and the other physician or prison officials were informed of such <u>de facto</u> denial of medical care and failed to act in the fashion displaying deliberate indifference of constitutional magnitude. <u>Accord</u> <u>Junne v. Atl. City Med. Ctr.</u>, 2008 U.S. Dist. LEXIS 34147, at *39-45 (D.N.J. Apr. 25, 2008) (discussing the same at length).

Here, Plaintiff's proposed amended complaint, as drafted, falls short of stating a <u>Bivens</u> claim against anyone but Sieber, since it states no facts showing that Plaintiff actually requested the prescribed eye drops from any other Defendant and had his request denied by that Defendant for a non-medical reason. Indeed, Plaintiff merely asserts that he noted his

---

the prisoner found to be necessary, the court found his claims without merit because refusal to provide specialized tests indicated nothing more than a difference in opinion regarding the medical diagnosis and treatment and did not state an Eighth Amendment claim).

9

difficulties to Turner-Foster, Sulayman, Spaulding, Cane, Sutherland, Lopez and Grondolsky who, seemingly, believed that Plaintiff was receiving an ongoing medical care from Sieber.[7]

Plaintiff's FTCA claims, as stated in the proposed amended complaint, are equally deficient. The FTCA govern all claims against the United States for money damages for injury caused by the negligent or wrongful act or omission of an employee of the government while acting within the scope of his office or employment. See 28 U.S.C. § 2675 (a). "Thus, to state an FTCA claim, [a plaintiff] must allege facts sufficient" to establish that a particular actor was an employee of the government, within the meaning of the FTCA, and acted within the scope of his office and, in addition, the plaintiff must state facts establishing each element of "a claim under the tort law of the state where the conduct occurred." Kinsey v. Watkins, 460 F. App'x 877, 878 (11th Cir. 2012).

Under New Jersey law, a negligence claim requires a plaintiff to establish: (1) that each named defendant owed the

---

[7] However, since Sieber's two latest rounds of submissions maintain that, under the prison regulations, he was without power to direct, authorize or otherwise affect the process of disbursement of eye drops to Plaintiff, Plaintiff might be able to allege a viable Bivens claim against other Defendants under the standard ensuing from the holdings of Spruill-Nami-Durmer by stating facts showing that those Defendants: (a) actually knew of the limitations on Sieber's authority; (b) had the authority to direct disbursement of eye drops to Plaintiff; but (c) acted with deliberate indifference to Plaintiff's need for these eye drops.

10

plaintiff a particular duty relevant to the alleged injury; (2) that this defendant actually breached that duty; and (3) that the defendant's breach proximately caused the alleged injury. See Keith v. Truck Stops Corp. of Am., 909 F.2d 743, 745 (3d Cir. 1990). In determining whether a duty exists, the Supreme Court of New Jersey applies a two-step analysis. See Olivo v. Owens-Illinois, Inc., 186 N.J. 394 (2006). First, the plaintiff must establish that the defendant could foresee the harm to the plaintiff. See id. "Once the ability to foresee harm to a particular individual has been established, . . . considerations of fairness and policy govern whether the imposition of a duty is warranted." Id. at 1148. "[W]hether imposing a duty is fair involves 'weighing, and balancing several factors — the relationship between the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" Id. at 1149 (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426 (N.J. 1993)).

Here, Plaintiff's proposed amended complaint merely asserts, without any additional detail, that each named Defendant is or was "employed" by – or was an "employee" of – the Bureau of Prisons ("BOP"). See Docket Entry No. 101-2. Plaintiff makes this assertion even with respect to Sieber.[8] Compare id. to See

---

[8] The Court's March 20, 2012 Opinion previously concluded that for purposes of any FTCA claim, Sieber was not an employee of the United States, but rather that he was an independent

11

Docket Entry No. 82 (so holding). Therefore, Plaintiff's FTCA allegations are deficient as to the employee prong of all his FTCA challenges since Plaintiff does not plead sufficient facts establishing the employment relationship between the United States and each particular Defendant.

Moreover, even assuming that each Defendant, other than Sieber, is an employee of the United States within the meaning of the FTCA, it remains that Plaintiff has not pled sufficient facts to demonstrate that each of these Defendants owed Plaintiff a duty to act under the governing New Jersey law, and that each Defendant breached that duty by failing to act, and that this failure caused Plaintiff's injury. Rather, it is fair to say that Plaintiff's amended complaint consists of mostly legal conclusions and recitals of the tort elements for a negligence

---

contractor. (Op. [Doc. No. 82] 22-32, Mar. 20, 2012.) "The law of the case doctrine 'limits relitigation of an issue once it has been decided' in an earlier stage of the same litigation." Hamilton v. Leavy, 322 F.3d 776, 786-87 (3d Cir. 2003) (quoting In re Cont'l Airlines, Inc., 279 F.3d 226, 232 (3d Cir. 2002)). While that doctrine allows for reconsideration of an issue when there exists new evidence, supervening law, or clear error that would create manifest injustice in the earlier decision. See In re City of Phila. Litig., 158 F.3d 711, 718 (3d Cir. 1998) (citation omitted). However, "if the evidence at the two stages of litigation is 'substantially similar,' or if the evidence at the latter stage provides more support for the decision made earlier, the law of the case doctrine will apply." Hamilton, 322 F.3d at 787 (citation omitted). Here, Plaintiff asserts in a conclusory fashion that Sieber is an employee of the United States. However, it is unclear if this was an oversight in the amended complaint or whether Plaintiff is trying to relitigate the law of the case as to Sieber's status.

claim. See Docket Entry No. 101-2, at 8 ("[Defendants] committed professional negligence, medical negligence, acted negligently, and failed to act in accordance with the applicable standard of care under the laws of the State of New Jersey," "[Defendants] had a duty to use reasonable skill and care when examining and treating Plaintiff," "[Defendants] breached their duty by failing to abide by the standard of care applicable to medical personnel").[9]

However, these statements alone are facially insufficient it for the purposes of Plaintiff's FTCA challenges and even his state tort law claims alleging negligence. See Iqbal, 556 U.S. at 678 ("[L]egal conclusions" and "[t]hreadbare recitals of

---

[9] The factual allegations stated in the proposed amended complaint appear thin even as to Lopez, with regard to whom Plaintiff merely alleged that "Lopez . . . was the chairperson of the Utilization Review Committee [which] evaluated Plaintiff's medical requests [that] were largely denied." Docket Entry No. 101-2, at 6. The remainder of Plaintiff's allegations essentially assert that Plaintiff informed the other Defendants about his treatment difficulties. Thus, the factual allegations are insufficient to establish how and why these Defendants had an affirmative duty to act by providing Plaintiff with the prescribed eye drops or referring Plaintiff for eye pressure checks with another physician or a consultation with a particular specialist. Finally, Plaintiff's FTCA claim based on the alleged "fail[ure] to abide by the standard of care applicable to medical personnel" with regard to Grondolsky, who was the warden rather than a medical practitioner, must fail. Even if we assume that Plaintiff intended to assert Grondolsky's failure to retain services of a more specialized medical staff, such claim would still be without merit under New Jersey law. See Rabinowitz v. Reyman, 2010 N.J. Super. Unpub. LEXIS 1725, at *25-26 (N.J. Super. Ct. App. Div. July 23, 2010).

13

elements of a cause of action, supported by mere conclusory statements, do not suffice" as bona fide factual material).

Correspondingly, as drafted, Plaintiff's proposed amended complaint does not contain enough factual matter to assert any additional claims. However, ordinarily, the plaintiff may be granted "leave [to amend,] . . . when justice so requires." Foman v. Davis, 371 U.S. 178, 182 (1962); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993). While "[a]llowing leave to amend where there is a stark absence of any suggestion by the plaintiffs that they have developed any facts since the action was commenced, which would, if true, cure the defects in the pleadings" would frustrate the Court's ability to filter out lawsuits that have no factual basis, Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 164 (3d Cir. 2004) (internal quotation marks and citations omitted), "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman, 371 U.S. at 182.

In light of this Court's recent appointment of counsel, leave to amend appears appropriate.[10] Thus, Plaintiff will be

---

[10] Sieber contends that Plaintiff's application for leave to amend is a de facto motion for reconsideration as to the claims and issues already adjudicated in this action. See Docket Entry No. 102, at 4-7. While Sieber is correct as to his observation that Plaintiff's application presents, in that

14

allowed an opportunity to file a counseled amended pleading at this time. Correspondingly, the Court will grant Plaintiff's motion, Docket Entry No. 101, in part and will deny it in part. To the extent Plaintiff seeks to file his proposed amended complaint, Docket Entry No. 101-2, his application will be denied. However, he will be granted leave to file a counseled amended pleading, provided that such pleading: a) is drafted in accordance with the guidance provided in this Opinion; b) states specific facts in support of each of Plaintiff's claims asserting Bivens challenges against each particular Defendant; c) alleges specific facts in support of each of Plaintiff's FTCA claims showing that the allegedly negligent conduct by each particular individual Defendant resulted in liability within the meaning of New Jersey law and establishing that each particular individual was an employee of the United States within the meaning of the

---

respect, an unwarranted attempt to disturb the law of this case, it is unclear if that was intentional or a simple oversight. Sieber also asserts that he would suffer prejudice as a result of Plaintiff's undue delay. However, the record is clear that Plaintiff had counsel assigned to this matter only recently, and while many Plaintiff's prior applications caused this Court a pause, Plaintiff's attempt to file a counseled amended pleading was not tardy. Finally, because Plaintiff's FTCA claim based on Sieber's conduct will remain dismissed based on his status as an independent contractor and because Plaintiff's Bivens challenges against Sieber await adjudication on the basis of the extraneous material Sieber may present at the summary judgment stage, Sieber's position would not be affected, let alone prejudiced, by Plaintiff's filing of a thoughtfully executed counseled amended pleading.

FTCA; and d) is drafted in light of the law of the case before counsel was appointed.

An appropriate Order follows.

                                           s/ Noel L. Hillman
                                           **Noel L. Hillman**
                                           United States District Judge

Dated: **June 30, 2013**
At Camden, New Jersey